LISA J. BAZANT, PLLC
GW Building
2722 3rd Avenue North, Suite 400
P.O. Box 1832
Billings, MT 59103-1832
Phone: (406)696-2197
lisabazant@hotmail.com

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> KRISTOFER MIKAL WRIGHT, <br><br> Defendant. | **Case No.** CR 24-93-BLG-SPW <br><br><br> **DEFENDANT'S SENTENCING MEMORANDUM** |

COMES NOW the Defendant, Kristofer Mikal Wright, by and through his counsel of record, Lisa J. Bazant, and offers this Sentencing Memorandum to this Honorable Court for Mr. Wright's sentencing, currently scheduled for *Friday, March 27, 2026 at 2:30 p.m.*

-1-

# I. INTRODUCTION

On June 5, 2024, Wright was named in a one-count Criminal Complaint charging him with Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1). On June 11, 2024, Wright appeared for an initial appearance before U.S. Magistrate Judge Timothy Cavan.

On July 10, 2024, Wright was named in a seven count Indictment, charging him with Count I: Conspiracy to Possess with Intent to Distribute Controlled Substances; Count II: Possession with Intent to Distribute Controlled Substances; Count III: Assault on a Federal Officer; Count IV: Possession of a Firearm in Furtherance of a Drug Trafficking Crime; Count V: Possession of a Firearm in furtherance of a Drug Trafficking Crime; Count VI: Prohibited Person in Possession of a Firearm and Ammunition; Count VII: Prohibited Person in Possession of a Firearm and Ammunition, in violation of 21 U.S.C. §§846, 841(a)(1) and 18 U.S.C. §§111(a)(1), 924(c)(1)(A)(I) and 922(g)(1), respectively.

On May 20, 2025, Wright entered a guilty plea to Count II: Possession with Intent to Distribute Controlled Substances, and Count VI: Felon in Possession of a Firearm, with the benefit of a plea agreement.

Wright has remained incarcerated since June 5, 2024.

## II.  DISCUSSION

## GUIDELINE CALCULATIONS

While rendering the Sentencing Guidelines advisory, the Supreme Court preserved a key role for the Sentencing Commission in that district courts must treat the Guidelines as the "starting point and the initial benchmark" in imposing sentencing.  Kimbrough v. United States, 128 S.Ct. 558, 574 (2007); *See also*,  Rita v. United States, 127 S.Ct. 2456 (2007)**.**

In the instant case, the presentence report appropriately calculated the total offense level and criminal history category:  the Total Offense Level is a 31 and  a Criminal History Category V for an Advisory Guideline range of **168-210 months.**

Wright is requesting the Court impose a sentence of 84 months, to be followed by five years of supervised release.

### MITIGATING FACTORS UNDER 18 U.S.C. §3553(a):

The Sentencing Guidelines "place essentially no limit on the number of potential factors that may warrant a departure."  Koon v. United States, 518 U.S. 81, 106 (1996).  The Guidelines "do not displace the traditional role of the district court in bringing compassion and common sense to the sentencing process ... in areas where the Sentencing Commission has not spoken ... district courts should

not hesitate to use their discretion in devising sentences that provide individualized justice." United States v. Williams, 65 F.3d 301, 309-10 (2nd Cir. 1995).

In the aftermath of United States v. Booker, 543 U.S. 200 (2005), a district court must consider all of the factors designated in 18 U.S.C. §3553(a) and strive to find the most reasonable sentence for the particular individual under consideration. United States v. Zavala, 443 F.3d 1165, 1170 (9th Cir. 2006).   As this Honorable Court is well aware, 18 U.S.C. §3553 mandates that the Court **"impose a sentence that is sufficient, but not greater than necessary"** and to "consider the nature and circumstances of the offense and the history and characteristics of the defendant." Additionally, the sentence imposed is to reflect the seriousness of the offense, promote respect for the law, provide adequate deterrence, protect the public from future crimes of the defendant and provide defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

This Court has the authority to impose a below-guideline sentence under case law, the United States Sentencing Guidelines and 18 U.S.C. §3553(a). Through its holdings in Booker, *supra*, Kimbrough v. United States, 522 U.S. 85 (2007) and Gall v. United States, 522 U.S. 38 (2007), the Supreme Court authorizes this Court to impose a below-guideline sentence through the application

-4-

and individualized assessment of the 18 U.S.C. §3553(a) factors.  Even though a mitigating factor does not qualify for a traditional downward departure, this Court may still use the factors to sentence below the advisory range.  *See* <u>United States v. Menyweather</u>, 447 F.3d 625, 634 (9th Cir. 2006)(in an embezzlement of $500,000 case, a downward departure of 8 levels was not an abuse of discretion because "[i]n the 'broader appraisal' available to district courts after <u>Booker,</u> courts can now [h]ave discretion to weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed 'not ordinarily relevant.'").

**A.  The History and Characteristics of the Defendant:**

Kristofer Wright is a 38 year old man who faces sentencing for his second federal felony convictions:  Possession with Intent to Distribute Controlled Substances and Felon in Possession.  Additionally, he has been convicted in state court of previously Possession of Schedule I or II Narcotics (2023); Larceny (2008); and Delivery of a Controlled Substance Marijuana (2008). The present case is Defendants fifth time he has faced felony adjudication.

Notably, none of the felony adjudications are of a violent nature. Even thought the current offense involved the possession of weapons, they appeared to be merely present; Kris was not carrying nor brandishing a weapon.  The guns

were bartering material – common currency in the world of drug distribution.  Kris is not a violent individual.  At the age of 38, one would expect that he would have demonstrated a propensity for violence if such was his nature.

The presentence report (hereinafter "PSR") provides  significant details of Kris' personal history.  (PSR ¶¶ 59-94).   The PSR reflects that he had a chaotic upbringing. And that chaotic upbringing was not just in the dysfunction one would experience with parents who would not get along.  Kris' father was a full-born addict and a convicted felon.  To this day, he is once again in custody in Wyoming. Kris' mother has provided an account of the negative influence Kris' father has had on him.  It is no surprise that Kris finds himself in the same predicament as his father – addicted and facing another felony conviction.  How different the fabric of this case would be had Kris' mother picked him up from jail after he was mistakenly released in March, 2024.  Imagine Kris' feelings of fear and desperation, knowing he was released in error.  It is no surprise when an addict experiences those feelings, he turns to drug use and someone who has regularly provided him drugs. And who was waiting at the detention facility door but his father – the same person who had long enabled Kris' addiction.   The PSR reflects that Kris started using drugs at age 13, provided to him by his father.   (PSR ¶75,

79).  Kris fell into the same pattern, laid out for him by his father:  Use - distribute - repeat.

Could things had been different had Kris' mom picked him up from jail and welcomed him home? Perhaps she would have directed to pursue treatment, resolve his pending cases, and avoid future drug use.  But she said no.

> Kris asked me to go bail him out when he was picked up and taken to Casper.  I told him No.  Kris should never have been bailed out from Casper, but his Father paid his bail, had drugs on him when he picked Kris up.  So here is why we are here today.  If Kris wanted money his Dad would hold it over his head to get him to do his bidding.)

(Exhibit 501).  Tami's letter reflects the cruel honesty and resolve that she should have pursued when Kris was younger.  It reflects her understanding that Kris must take responsibility for the current offense, support his family and change his behavior.  Kris' mother knows that he can be a responsible person when he is sober.  Tami has recognized the most dominant influence in Kris' life, his father, by stating "[t]hank the [L]ord his Father is now sitting behind bars where he should have been years ago, so he will no longer be able to get Kris to do his bidding[.]" (Id).  Hopefully, when Kris is released from incarceration, he will gravitate to more positive influences.

Kris has spent a great deal of his adult life in custody.  With this being his second federal adjudication, should we wonder if Kris has finally learned his

lesson?  In this case, it is not a matter of Kris learning his lesson, it is a matter of

him making a decision to change his life.  Since he was arrested for the current

offense – nearly two years ago – he has realized that it is his addiction that has put

him in his current predicament.  Indeed, he realizes that declining to participate in

RDAP in his last federal incarceration was a serious mistake. Kris was too short-

sighted to realize the consequences of that decision.  Now – Kris is focused on

what will keep him sober in the long term.   Kris has identified the specific positive

steps to avoid similar behavior.

It's apparent to Kris' family and friends that he is more in need of treatment

than incarceration.  It seems to be a common theme in the letters of support.

(Exhibits 502 and 503).

Kris has researched a number of potential programs that would aid in his

rehabilitation, all of which he is ineligible due to the guideline restrictions: STAR

Court, Restoration Ranch, Adult/Teen Challenge.  But that didn't stop him from

inquiries and applications.  And it didn't stop him from engaging in programming

at Big Horn County Detention Facility, including a faith-based program called

"Addiction Recovery Program, a Guide to Addiction Recovery and Healing."  The

booklet is replete with handwritten insight and reflection and underlined passages

relative to his addiction, recovery and positive focus on the future.  Knowing that

aforementioned treatment options are not a realistic option, and an incarceration sentence imminent, he is eager to participate in RDAP.

But Kris knows that he will not be eligible for RDAP if there is a Wyoming pending case. For that reason, he has actively sought to resolve a recently filed felony Information, which alleged conduct from July 23, 2023. (Exhibit 504). Although filed in 2023, Wyoming authorities only recently elected to proceed with the prosecution. Kris was assigned counsel on November 10, 2025. Since the activation of the Wyoming case, Kris has reached out to counsel and the Court to express his desire to resolve the charge, pursue treatment, and put the circumstances of the federal case behind him. Kris has gone so far as to file pro se motions directing Wyoming authorities to file a detainer – he doesn't want anything to inhibit or prohibit his RDAP treatment opportunity and subsequent programming. He is trying to be proactive and clear the path for his recover. (Exhibits 505 and 506).

Having a positive influence in your life is important to one's recovery. Currently, the most positive influence in Kris' life is his mother. Tami has remained steadfast, and she has a realistic and objective picture of what Kris needs to stay sober and avoid future criminal behavior. Another positive element of Kris' life is of his own making – he has reached out to his kids and established

contact with Social Service Agencies that are overseeing the reunification of the family. Kris wants to set an example for his kids and be involved in their lives when he is realized from custody.

> [I] truly have so much I want to invest in build on and not lose. My wife Korinne, our 6 kids. I have matured and I've come to the realization that the greatest fortunes in life are the ones closest to use. My wife, kids and family are my fortune. I want more than anything to be able to still have a life with the kids and her. I do wanna be someone they can trust, look up too, count on and know im there to stay and want only the best for them all.

(PSR, ¶28, pg. 9)

Kris is finally looking ahead. He has the maturity to think beyond his next fix or his next release from custody. Kris is making a deliberate effort *not* to follow in the footsteps of his father. Kris' father is a perfect example of poor parenting: he is a criminal, an addict, and absent. At no point has Kris' dad reached out to Kris to express his support or regret. He has not sent a letter nor put money on his books. He has not reached out to counsel. Kris' dad is solely a person who will contact his son when he thinks he can benefit – either to get high or hustle drugs on the street.

It's unanimous: Tami, family friends, the PSR writer and Kris all recognize that Kris' best hope for success is to avoid any influence from his father.

**B.  The Sentencing Mandate in 18 U.S.C. §3553(a)(2):**

**1.  Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence and Protect the Public:**

Section 3553(a)(2)(A) requires the judge to consider "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment of the offense."  Wright acknowledges the gravity of the offenses for which he pleaded guilty.  His plea of guilty, his assistance and his admissions to the probation officer demonstrate his respect for the law and recognition of the severity of the crime.

A just punishment for Kris is one that balances the severity of his crime with his individual characteristics.  Here, a sentence of 84 months, to be followed by a term of supervised release,  is appropriate and substantively reasonable – a sentence that is sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. §3553(a)(2).   Such a sentence would be a reflection of Kris' non-violent criminal history, and takes into account the level of acceptance of responsibility for the current offense and his sincere desire for treatment.

**2.    Deterrence**

Section 3553(a) requires imposition of a sentence that serves crime control purposes – e.g., deterrence and incapacitation.  Congress directed that all sentences

must "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant."  See 18 U.S.C. § 3553(a)(2)(B) and (C).

The greatest element of deterrence will be Kris' ultimate successful completion of substance abuse treatment.  Once he has addressed his addiction, he will be less likely to commit offenses of a similar nature.

**3.      Protect the Public from Further Crimes of the Defendant**

With respect to the 18 U.S.C. § 3553(a)(2)(C) factor, the period of 84 months incarceration plus the 5 year period of supervised release, is more than sufficient to protect the public from further crimes by the defendant.  He has absolutely no convictions or arrests for violent offenses.  An excessive period of incarceration is unnecessary to protect the community from further criminal behavior.

**4.      Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

In Kris' case, addiction treatment is a pertinent issue when considering the §3553(a)(2)(D) factor.  But Kris is also eager to pursue education relative to the trades.  He is seeking a placement that offers such training - HVAC, electrical and construction. He has identified two placements that will provide both RDAP and vocational training: FCI Miami and FCI Seagoville, TX.

## III. CONCLUSION

The overarching statutory charge for the District Court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence, to protect the public and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

Kris acknowledges that this is his last chance.  If he does not put his whole heart into staying sober, he will effectively surrender the rest of his life to addiction and imprisonment.   As discussed above, Defendant respectfully requests that this Court sentence him to a period of 84 months incarceration, followed by five years of supervised release.   Further, pursuant to U.S.S.G. §5G1.3, Defendant respectfully requests the Court run the term of imprisonment concurrent with any term which might be imposed in *State of Wyoming v. Kristofer Mikal Wright,* CR 2023-234-COD.

**RESPECTFULLY SUBMITTED** this 6th day of March, 2026.

/s/ Lisa J. Bazant

LISA J. BAZANT

Counsel for Defendant

## CERTIFICATE OF SERVICE

### L.R. 5.2(b)

I hereby certify that on March 6, 2026, a copy of the foregoing document was served on the following persons by the following means:

__1__   CM-ECF

__ ___ Hand Delivery

_2___   Mail

_____ Overnight Delivery Service

_____ Fax

____ E-Mail

1.

CLERK, UNITED STATES DISTRICT COURT

Thomas Godfrey
Assistant U.S. Attorney
United States Attorney's Office

2.

Kristofer Wright

/s/ Lisa J. Bazant
LISA J. BAZANT

Counsel for Defendant